IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CYNTHIA YOUNG BOLEK,

        Plaintiff,

v.

CITY OF HILLSBORO, an Oregon
Municipal corporation; RON
LOUIE, an individual; STEVE
GREAGOR, an individual; and
MICHAEL BROWN, an individual,

        Defendants.

3:14-cv-00740-SB

ORDER

**BROWN, Judge.**

Magistrate Judge Stacie Beckerman issued Findings and Recommendation (F&R)(#80) on November 14, 2016, in which she recommends the Court grant Defendants' Motion for Summary Judgment (#43), deny Plaintiff's Motion for Partial Summary Judgment (#46), and dismiss this matter. Plaintiff filed timely Objections to the Findings and Recommendation. The matter is now

1 - ORDER

before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1).  *See also Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

## DISCUSSION

### I.  Background

Plaintiff Cynthia Young Bolek alleges numerous claims against the City of Hillsboro and a single claim against the three individual Defendants Ron Louie, Steve Greagor, and Michael Brown arising out of her employment with the City.  In her First Amended Complaint (#8) Plaintiff asserts the following claims:

> **First and Second Claims:**[1]  Retaliation for reporting matters of public concern in violation of 42 U.S.C. § 1983;
>
> **Third Claim:**  Retaliation by a public employer in violation of Oregon Revised Statute § 659A.203;
>
> **Fourth Claim:**  Retaliation for whistleblowing in violation of Oregon Revised Statute § 659A.199;
>
> **Fifth Claim:**  Retaliation for opposing unlawful

---

[1]  Except for her Second Claim, which is brought against the individual Defendants, Plaintiff brings all of her claims against the City only.

employment practices in violation of Oregon Revised Statute § 659A.030(1)(f);

**Sixth Claim:** Retaliation for whistleblowing in violation of Oregon Revised Statutes § 659A.230;

**Seventh Claim:** Gender discrimination in violation of Oregon Revised Statute § 659A.030;[2]

**Eighth Claim:** Interference with leave rights pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq.;

**Ninth Claim:** Retaliation for use of leave pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq.;

**Tenth Claim:** Interference with leave rights pursuant to the Oregon Family Leave Act (OFLA), Oregon Revised Statutes § 659A.190, et seq.;

**Eleventh Claim:** Retaliation for use of leave pursuant to the Oregon Family Leave Act (OFLA), Oregon Revised Statutes § 659A.190, et seq.;

**Twelfth Claim:** Disability discrimination and/or retaliation pursuant to Oregon Revised Statute § 659A.130-145; and

**Thirteenth Claim:** Intentional infliction of emotional distress.

The Magistrate Judge accurately summarizes the facts underlying this case, and the Court accepts that summary. The Court, however, reiterates the following facts that are specifically pertinent to the parties' Motions:

Plaintiff has been a Support Services Division Manager with the Hillsboro Police Department since 2001 and reports directly

---

[2] Plaintiff has withdrawn her Seventh Claim for gender discrimination against the City.

3 - ORDER

to the police chief. In December 2012 Plaintiff suffered a cardiac arrest. Plaintiff was eventually cleared to work from home on a limited basis. Plaintiff was also cleared by her doctor to participate in meetings with the department's senior officials at the office. The City approved intermittent medical leave for Plaintiff, including flexible work hours and the ability to work from home.

At the heart of Plaintiff's claims is a meeting that occurred on May 6, 2013. Plaintiff alleges at this meeting Defendant Ron Louie, who was acting as interim Chief of Police, announced to the group that he intended to "reorganize" the police-department management team, remove Plaintiff's responsibilities, reassign Plaintiff's subordinates to other managers, and change Plaintiff's supervisory structure so that she reported directly to one of her peers rather than to the police chief. According to Plaintiff Defendant Louie yelled profanities at Plaintiff during the meeting and also told her she was done and "didn't need to be there." Plaintiff was humiliated and devastated by this conduct because she believed she was being demoted. When Plaintiff asked Louie if they could discuss the issue privately, Louie refused and stated he was making this change for Plaintiff's own good because of her medical condition. Louie later acknowledged his conduct was "insulting," that his demeanor "unacceptable," that he was "pissed," and that his body

language was "forceful." F&R at 2-4, 6-7.

Defendants move for summary judgment as to all claims asserted against them, and Plaintiff moves for partial summary judgment as to her First,[3] Third, Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, and Twelfth Claims.

As noted, the Magistrate Judge recommends the Court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

## II. General Objections

In her Objections the Plaintiff raises "general objections" to the F&R based on the arguments raised in her Motion and during oral argument before the Magistrate Judge.

This Court has carefully considered Plaintiff's general objections and concludes they do not provide a basis to modify the Findings and Recommendation. The Court also has reviewed *de novo* the pertinent portions of the record and does not find any error in the Magistrate Judge's Findings and Recommendation.

## III. Specific Objections

Plaintiff asserts the following "specific objections" to the Findings and Recommendation and contends the Magistrate Judge erred when she (1) incorrectly applied the legal standard in her analysis of Plaintiff's retaliation claims and determined Plaintiff did not suffer an adverse-employment action; (2)

---

[3] Plaintiff has now withdrawn her First Claim.

5 - ORDER

incorrectly concluded the facts did not support a retaliatory adverse-employment action; (3) improperly ignored the conclusions of the City's investigation report, which included a finding of misconduct by Defendant Louie; (4) incorrectly found the City's subsequent investigation of Plaintiff's claims was not a "sham" and did not constitute an adverse-employment action; (5) applied the incorrect legal standard when determining Plaintiff's federal and state family-leave claims; and (6) construed Oregon law too narrowly when considering Plaintiff's intentional infliction of emotional distress claim.

### A.   Adverse Action

Plaintiff contends the Magistrate Judge incorrectly applied the controlling legal standard when she determined Defendants' actions did not constitute an adverse-employment action as a matter of law.  Plaintiff concedes the Magistrate Judge stated the correct legal standard as follows:

> With regard to what qualifies as an adverse employment action to prove a retaliation claim, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse," which means that the action "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

F&R at 25-26 (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  The *White* court further stated: "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and should be judged

6 - ORDER

from the perspective of a reasonable person in plaintiff's position, considering all the circumstances." *Id.* at 69.

Plaintiff argues the Magistrate Judge failed to apply this standard correctly when the Magistrate Judge concluded an adverse-employment action did not exist based on the fact that Plaintiff was not "personally" dissuaded from making challenges of discrimination or asserting her rights due to Defendants' actions.

The record reflects the Magistrate Judge thoroughly reviewed the facts and, based on "the particular circumstances under which they occur[red]," concluded "none of the alleged adverse-employment actions alleged by [Plaintiff], either singularly or in combination, rise to the level of material adversity."

The Court has carefully reviewed *de novo* the pertinent portions of the record and concludes the Magistrate Judge correctly applied the legal standard to the facts of this case. Accordingly, the Court does not find any error in the Magistrate Judge's Findings and Recommendation as to this issue.

**B.   Sufficiency of Defendants' Conduct**

Plaintiff next contends the Magistrate Judge incorrectly concluded the facts surrounding the meeting on May 6, 2013, were insufficient to constitute evidence of a retaliatory adverse-employment action.

7 - ORDER

Title VII "does not set forth a general civility code for the American workplace." *Burlington N.*, 548 U.S. at 68. Not all conduct in the workplace rises to the level of an adverse-employment action. *See Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009)(holding that employer threatening plaintiff with termination and criminal prosecution did not constitute a materially adverse-employment action since plaintiff was not fired or prosecuted). *See also Cates v. PERS of Nevada*, 357 F. App'x 8, 10 (9th Cir. 2009)(affirming district court's grant of summary judgment on plaintiff's FMLA claims because "[t]he limited reassignment of [plaintiff's] email and custom correspondence duties as well as her retirement counseling coordinator duties constituted an insignificant change in her employment status and did not individually or cumulatively constitute an adverse employment action").

Although Plaintiff alleges she was humiliated and demeaned by Louie's conduct, the Magistrate Judge concluded the circumstances of the May 6, 2013 meeting, including the fact that Louie's conduct could be considered "mean," were insufficient to establish a materially adverse-employment action. F&R at 29.

The Court has reviewed *de novo* the pertinent portions of the record and finds the Magistrate Judge thoroughly reviewed the record and applied the correct legal standard when she determined Louie's conduct in the meeting on May 6, 2013, did not

8 - ORDER

constitute an adverse-employment action. Accordingly, this Court does not find any error in this aspect of the Magistrate Judge's Findings and Recommendation.

### C. The City's Investigation

Plaintiff also asserts "the City purposefully *pretended* to investigate" her claim. Pl.'s Opp. at 43 (emphasis in original). Plaintiff characterizes the City's investigation as a sham or phoney investigation and contends it was, therefore, an adverse-employment action because, among other things, it discouraged future complaints. In addition, Plaintiff contends the Magistrate Judge mistakenly equated the "sham" investigation with a "bad" investigation when she determined there was not an adverse-employment action.

The Magistrate Judge pointed out that "it is undisputed the City conducted a timely independent investigation into [Plaintiff's] allegation of retaliation." F&R at 34. The Magistrate Judge noted, however, that "[t]he fact that [Plaintiff] disagrees with the methods or conclusions of the independent investigator, or the number of interviews he conducted, is not a basis for a retaliation claim against the City. Accordingly, the investigation was not a 'sham,' and did not rise to the level of an adverse employment action." *See Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 146 (2d Cir. 2014)(finding that an employer's investigation of a harassment

complaint "without more-that is, without additional particularized facts evidencing a retaliatory intent and resulting in, or amounting to, adverse job consequences for the complainant-cannot sustain a valid retaliation complaint")).

After a *de novo* review of the pertinent portions of the record, the Court does not find any error in this aspect of the Magistrate Judge's Findings and Recommendation.

### D. The City's Investigation Report

With respect to the Investigation Report following the City's investigation, Plaintiff contends the Magistrate Judge improperly disregarded the conclusions therein. In that report the City found Defendant Louie's conduct "could support an allegation of discrimination" that "potentially interfer[ed]" with Plaintiff's rights. Plaintiff argues these findings are binding; are admissible statements against the City; support summary judgment in her favor; or, at the least, create a genuine dispute of material fact.

Defendants, in turn, contend the City's investigation report reflects legal conclusions by the City's attorney that are not admissible evidence, are not binding as judicial statements, and do not create a genuine dispute of material fact.

In *Sullivan v. Dollar Tree Stores, Inc.,* the Ninth Circuit addressed for the first time whether legal conclusions in an official report are admissible as "findings of fact." The

10 - ORDER

court held "pure legal conclusions are not admissible as factual findings," and, "[i]n the context of a summary judgment motion, a conclusion of law by a third-party investigator does not, by itself, create a genuine issue of material fact for the obvious reason that a legal conclusion is not a factual statement."  623 F.3d 770, 777 (2010).

In her analysis of these Motions the Magistrate Judge agrees with Defendants that the findings of the City's report "are not factual admissions but rather legal conclusions which do not bind the court."

After a *de novo* review of the pertinent portions of the record, the Court does not find any error in the Magistrate Judge's Findings and Recommendation as to this issue.

### E.     FMLA Interference Claim

Plaintiff also contends the Magistrate Judge applied a subjective rather than an objective legal standard to Plaintiff's Eighth and Tenth Claims based on Defendants' interference with Plaintiff's rights under FMLA and OFLA.  In particular, Plaintiff asserts the Magistrate Judge failed to consider the allegedly improper motive behind Defendant Louie's attempt to "demote" Plaintiff or to interfere with her medical leave rights by changing her job duties while she was on medical leave.

The Magistrate Judge recommends dismissal of Plaintiff's Tenth Claim for interference with Plaintiff's rights

under OFLA on the ground that such a claim for relief is not cognizable under OFLA. Plaintiff does not challenge this basis for dismissing her Tenth Claim.

Under FMLA an employee may bring a claim when the employer "interfer[es] with, restrain[s], or den[ies] the exercise of or the attempt to exercise, any right provided" by FMLA. 29 U.S.C. § 2615(a)(1). Pursuant to Department of Labor regulations, "interference" includes not only refusing to authorize leave, but also discouraging an employee from using such leave. 29 C.F.R. § 825.220(b). In addition, employers cannot use the taking of FMLA leave "as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

The Magistrate Judge found FMLA allows a transfer of duties while an employee is on leave; considering all of the circumstances, the City did not take an adverse-employment action against Plaintiff as a result of the May 6, 2013, meeting; and the City provided Plaintiff with all FMLA entitlements.

After a *de novo* review of the pertinent portions of the record, the Court concludes the Magistrate Judge correctly applied the proper legal standard to the facts of this case. Accordingly, the Court does not find any error in the Magistrate Judge's Findings and Recommendation as to this issue.

**F.     Intentional Infliction of Emotional Distress**

Finally, Plaintiff contends the Magistrate Judge

construed Oregon law too narrowly in her analysis of Plaintiff's intentional infliction of emotional distress claim (IIED).

To establish a claim for IIED in Oregon a plaintiff must prove: (1) defendant intended to cause plaintiff severe emotional distress or knew with substantial certainty that its conduct would cause such distress; (2) defendant engaged in outrageous conduct (*i.e.*, conduct extraordinarily beyond the bounds of socially tolerable behavior); and (3) defendant's conduct, in fact, caused plaintiff severe emotional distress. *See McGanty v. Staudenraus*, 321 Or. 532, 543 (1995).

Based on the circumstances of this case, the Magistrate Judge found Defendant Louie's conduct toward Plaintiff was "insensitive and mean" and "unpleasant and unprofessional," but, nevertheless, "do[es] not rise to the level of 'outrageous' or beyond the bounds of socially appropriate" even when viewed in the light most favorable to Plaintiff.

Whether conduct constitutes an actionably outrageous transgression of social norms is based on a fact-specific, case-by-case analysis. *Zeggert v. Summit Stainless Steel, LLC*, No. 3:13-CV-00016-PK, 2014 WL 3512497, at *7-8 (D. Or. July 10, 2014) (citing *Lathrope-Olson v. Dep't of Transp.*, 128 Or. App. 405, 408 (1994)). Although a jury usually determines whether and the extent to which social norms have been violated, when the court functions as a gatekeeper in the context of a dispositive motion

13 - ORDER

against an intentional infliction of severe emotional distress claim, the court must assess whether plaintiff's evidence is sufficient to satisfy each of the elements of such a claim. *Zeggert*, 2014 WL 3512497, at *7-8 (citing Pakos v. Clark, 253 Or. 113 (1969)). *See also House v. Hicks*, 218 Or. App. 348, 358, *review denied*, 345 Or. 381 (2008).

  The Court notes in every case in which the Oregon appellate courts have allowed an emotional distress claim to proceed to a jury, the employer had engaged in conduct that was more than aggravating, insensitive, petty, irritating, perhaps unlawful, or mean. In some cases the employer engaged in or threatened to engage in unwanted physical contact of a sexual or violent nature (*see Lathrope-Olson v. Dep't of Transp.*, 128 Or. App. 405 (1994)(threatening to push the plaintiff into the path of oncoming vehicles)); used derogatory racial, gender, or ethnic slurs usually accompanied by some other aggravating circumstance (*see Whelan v. Albertson's, Inc.*, 129 Or. App. 501 (1994)(manager repeatedly referred to the plaintiff as a "queer" and imitated his allegedly effeminate characteristics)); exposed the plaintiff to actual physical danger (*see Babick v. Oregon Arena Corp.*, 333 Or. 401 (2002) (released intoxicated and violent concert-goers who had been detained by the plaintiffs)); repeatedly subjected the plaintiff to verbal abuse, forced her to do work from which she was medically exempted, and forced her to engage in illegal

14 - ORDER

conduct (see *Schoen v. Freightliner LLC*, 224 Or. App. 613 (2008)(called the plaintiff "worthless" almost daily, assigned work that exceeded her medical limitations, and ordered the plaintiff to collect illegal "football pool" bets)); or involved acts of psychological and physical intimidation, racism, or sexual harassment (see *Kraemer v. Harding*, 159 Or. App. 90 (1999)(continuing accusations that a school bus driver was a child sex-abuser after multiple investigations concluded there had not been any inappropriate conduct)). See also *Wheeler v. Marathon Printing, Inc.*, 157 Or. App. 290 (1998)(co-worker continued "sadistic" harassment including sexual intimidation and insults even after the plaintiff attempted suicide); *Mains v. II Morrow, Inc.*, 128 Or. App. 625 (1994)(daily physical assaults and sexual comments by supervisor); *Franklin v. Portland Comty. Coll.*, 100 Or. App. 465 (1990)(supervisor called an African-American male by the name "boy," issued false reprimands, shoved him, locked him in an office, suggested he apply elsewhere for employment, and otherwise subjected the plaintiff to "verbal and physical abuse").

    In *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, the Defendant directed plaintiffs to hold hands with two of their co-workers, demanded that they surrender their keys, paced tensely in front of them with clenched hands, accused them of being liars and saboteurs, terminated their employment, refused to explain

15 - ORDER

his conduct, and rashly ordered them off the premises. In finding that even this degree of inappropriate conduct did not rise to the level of socially intolerable conduct sufficient for an IIED claim, the court stated:

> "Socially intolerable conduct is conduct that is 'outrageous in the extreme.' *Patton v. J.C. Penney Co.*, 301 Or. 117, 124 (1986). Conduct that is merely 'rude, boorish, tyrannical, churlish and mean,' [*Id.*], does not satisfy that standard, nor do 'insults, harsh or intimidating words, or rude behavior ordinarily * * * result in liability even when intended to cause distress.' *Hall v. The May Dept. Stores*, 292 Or. 131, 135 (1984)."

112 Or. App. 234, 237 (1992)

In *Clemente v. State of Oregon* an employee was "subjected to an insensitive, mean-spirited supervisor who might have engaged in gender-based, discriminatory treatment." The court held those facts were not sufficiently aggravating to establish a *prima facie* case for IIED, especially in the absence of evidence that the employee was "verbally, sexually, or physically abused or harassed," "exposed to violence," or "repeatedly and viciously ridiculed." 227 Or. App. 434, 443 (2009).

After a *de novo* review of the record viewed in the light most favorable to Plaintiff, the Court concludes the facts do not create a jury question under the rigorous standard of conduct required for an intentional infliction of emotional distress claim. Thus, the Court concludes the Magistrate Judge

16 - ORDER

correctly applied the legal standard to the facts of this case, and, accordingly, the Court does not find any error in the Magistrate Judge's Findings and Recommendation in this respect.

## CONCLUSION

The Court **ADOPTS** Magistrate Judge Beckerman's Findings and Recommendation (#80) and, therefore, **GRANTS** Defendants' Motion for Summary Judgment (#43) as to all of Plaintiff's claims, **DENIES** Plaintiff's Motion for Partial Summary Judgment (#46), and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 13th day of February, 2017.

*[signature]*

ANNA J. BROWN
United States District Judge